### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| ANGELS OF CARE | § | |
| HOME HEALTH, INC., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:18-CV-3268-S-BK |
| | § | |
| ALEX M. AZAR II, SECRETARY, | § | |
| UNITED STATES | § | |
| DEPARTMENT OF HEALTH | § | |
| AND HUMAN SERVICES, | § | |
|     DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the district judge's order of reference, Doc. 19, this case has been referred to the undersigned for pretrial management. Pending before the Court is Plaintiff's *Motion and Application for Temporary Restraining Order and Injunctive Relief*, Doc. 3. A hearing was held on February 13, 2019. Doc. 22. For the reasons stated on the record at the hearing and that follow, Plaintiff's motion for a temporary restraining order should be **GRANTED IN PART.**

### I.    BACKGROUND

This is a dispute between a recipient of Medicare payments and the government entity in charge of distributing Medicare payments and reviewing the claims of recipients who have received Medicare payments. A Medicare audit determined that Plaintiff, a home health agency participating in the Medicare program, received $2.5 million in Medicare payments to which it was not entitled. Plaintiff appealed this "overpayment" determination through two of four steps of a statutorily prescribed administrative appeals process. Doc. 10 at 7. Plaintiff filed its request

for the third step in the administrative appeals process—a hearing before an Administrative Law

Judge ("ALJ")—on October 25, 2018. Doc. 1 at 12. Although the ALJ is required to render a

decision "not later than" 90 days after a timely request, 42 U.S.C. § 1395ff(d)(1)(A), a hearing in

this case was not timely held and "may not be available for at least another three to five years

due to the serious backlog of agency appeals." Doc. 1 at 12.

Plaintiff filed the instant motion in December of 2018 to prevent Defendant from

initiating a recoupment[1] of the alleged overpayment until Plaintiff's underlying case is heard by

an ALJ. Specifically, Plaintiff asserts an *ultra vires* claim and claims for violation of procedural

due process, the Medicare Act, and the overpayment recovery scheme. Doc. 1 at 12-15.

Plaintiff requests that the Court enjoin Defendant from "recoupment of an alleged $2,476,761.00

recalculated Medicare overpayment" and order Defendant to refund "any improperly recouped

amounts [and] halt accrual of interest on the alleged overpayment until Defendant can provide an

administrative appeal in accordance with 42 U.S.C. §1395ff." Doc. 3 at 4.

## II.    LEGAL STANDARD

A temporary restraining order is to preserve the status quo and prevent irreparable harm.

*Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

To be entitled to a temporary restraining order, a party must demonstrate that it meets a four-

prong test: (1) a substantial likelihood of success on the merits; (2) a substantial threat of

immediate and irreparable harm for which it has no adequate remedy at law; (3) that greater

injury will result from denying the temporary restraining order than if it is granted; and (4) that a

temporary restraining order will not disserve the public interest. *Daniels Health Scis., LLC v.*

---

[1] "Recouping" refers to the administrative mechanism of deducting the overpayment from future
Medicare payments that Plaintiff may become entitled to, and "is a procedure that is authorized
by Congress after completion of the second level of administrative review." Doc. 10 at 7.

*Vascular Health Scis., LLC*, 710 F.3d 597, 582 (5th Cir. 2013). "The decision to grant or deny a preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

### III. PARTIES' ARGUMENTS AND ANALYSIS

#### A. *Substantial Likelihood of Success on the Merits*

The Court must first determine whether Plaintiff has a substantial likelihood of success on its procedural due process claim. "Procedural due process protects against governmental deprivation of a liberty or property interest." *Med-Cert Home Care, LLC v. Azar*, No. 3:18-CV-2372-G, 2019 WL 426465, at *4 (N.D. Tex. Feb. 4, 2019) (Fish, J.). When analyzing whether a party's procedural due process rights have been violated, courts weigh three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). Furthermore, as the Court of Appeals for the Fifth Circuit recently explained, since Plaintiff seeks to prevent recoupment until the ALJ hearing process is concluded, a demonstration of the likelihood of success on the merits "would require showing that [this] procedure[] [is] required before recoupment—rather than showing that the outcome of [the] procedure[] will likely be favorable in a specific case." *Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496, 504 n.14 (5th Cir. 2018) (citing *Eldridge*, 424 U.S. at 335)).

Plaintiff argues there is a substantial likelihood of success on the merits of its claims because "Defendant has failed to provide a hearing in accordance with the requirements of 42 U.S.C. §1395ff(d)(1)(A), [and as a result] its current Medicare payments will be recouped to

collect alleged overpayment [which] will force it out of business and into bankruptcy." Doc. 3-1 at 5. In opposition, Defendant argues that that Plaintiff "does not have a due process right to an ALJ hearing," and that Plaintiff's right to due process is already protected by its statutory option to "escalate the merits of this dispute to the Appeals Council and, if desired, into federal court within mere months." Doc. 10 at 19-20. Further, since Plaintiff was "required to submit [all of its evidence] during the first two levels of the administrative review," Defendant reasons that the first two steps of the appeals process "ensure[ ] that [Plaintiff] has a meaningful ability to challenge and overpayment decision," and, thus, an ALJ "hearing is not required." Doc. 10 at 23

As an initial matter, "[p]recedent makes clear that [Plaintiff] has a valid property interest in receiving Medicare payments for services rendered." *Med-Cert Home Care, LLC*, 2019 WL 426465, at *6 (collecting cases). Thus, the Court will move to the second *Eldridge* factor and determine whether there is a high risk of erroneous deprivation of Plaintiff's property interest through the procedures used by Defendant, *i.e.*, Defendant's recoupment prior to Plaintiff being heard by an ALJ.

The Court recently addressed this issue and found that "forcing [a home health agency] to wait two to four years for a hearing before an ALJ while CMS recoups [payments] creates a high risk of erroneous deprivation of [the plaintiff's] property interest." *Med-Cert Home Care, LLC*, 2019 WL 426465, at *7. Moreover, in *Family Rehabilitation, Inc. v. Azar*, No. 3:17-CV-3008-K, 2018 WL 3155911 (N.D. Tex. Jun. 4, 2018) (Kinkeade, J.), the Court observed that while "[a] healthcare agency may be able to float its expenses and survive for the statutorily imposed 90-day period for an ALJ to hear an decide the appeal even while its alleged overpayments are in recoupment [,] it is unreasonable to expect a healthcare agency to scrape by for three to five years waiting for a hearing and decision while CMS recoups the alleged overpayments." *Id.*

Here too, forcing Plaintiff to wait years while Defendant recoups payments creates a high risk of erroneous deprivation of Plaintiff's property interest.  Likewise, as in *Family Rehab*, it is unreasonable to expect Plaintiff to "scrape by" for three to five years waiting for a hearing while Defendant recoups alleged overpayments.

Defendant's contention that Plaintiff is provided adequate due process by the administrative process because it can escalate its claim into the fourth step of the appeals process is unavailing.  In *Med-Cert Home Care*, the Court found that it was "clear … that escalation fails to provide adequate procedural due process, as it 'does not adequately protect the procedural safeguards the statute provides the appealing party.'"  *Med-Cert Home Care, LLC*, 2019 WL 426465, at *8 (internal citation omitted).  The Court noted that "the ALJ hearing presents appellants like Med-Cert with the opportunity to have a live hearing, present testimony, submit written statements of law and fact, and cross-examine witnesses." *Id.*; *see also Family Rehabilitation, Inc. v. Azar*, 886 F.3D 496, 504 n. 16 (5th Cir, 2018) ("[T]he timeline for escalation—combined with the massive backlogs at CMS—means that escalation would be similarly insufficient.").  Such procedural tools are not guaranteed to Plaintiff by escalation.  See *Med-Cert Home Care, LLC*, 2019 WL 426465, at *8 ("By contrast, when a party escalates their claim to the Medicare Appeals Council, the Council may, but is not required to conduct additional proceedings, including a hearing.").  And similarly, should Plaintiff choose to escalate into federal district court, the district court's review "is more deferential," whereas the ALJ's standard of review is de novo.  *Med-Cert Home Care, LLC*, 2019 WL 426465, at *9.  Thus, escalation would deprive Plaintiff of having a *de novo* review of his claim prior to the Defendant's recoupment.

Indeed, at the hearing, Plaintiff's counsel averred that if it bypassed the ALJ hearing, it would be denied the typical opportunity in such cases to examine witnesses on the procedures utilized, including the method of extrapolation.  And while at the last step of the administrative appeal, the Medicare Appeals Council *could* permit testimony, the decision is a unilateral one and Plaintiff would have no say in the matter.  Defendant's counsel did not contest either assertion.

Since the Court has concluded that Plaintiff has a property interest and that there is a high risk of erroneous deprivation of this interest, the Court must now consider the third *Eldridge* Factor.  Like in *Med-Cert*, the Court here too finds that Defendant's interest in recouping Plaintiff's alleged overpayments "will not be adversely affected by delaying the recoupment until after the ALJ's determination" because Defendant "will still be able to recoup the overpayment amount if the ALJ determination is in their favor." *Med-Cert Home Care, LLC*, 2019 WL 426465, at *9.  Accordingly, the Court finds that Plaintiff satisfies all three of the *Eldridge* factors, and concludes that Plaintiff has established a substantial likelihood of success on the merits of its procedural due process claim.

B. *Irreparable Injury*

Plaintiff argues that it will suffer irreparable injury because it will be forced "to close its doors long before an ALJ hears its case and issues its decision," and further avers that it will be "forced to lay off its employees and has lost essentially all of its revenues because it cannot get paid by Medicare." Doc. 3-1 at 5-6.  In opposition, Defendant contends that Plaintiff "has failed to establish a substantial threat of irreparable injury" because Plaintiff has "the option to request a repayment plan to pay back the overpayment over time in lieu of being subject to the recoupment process." Doc. 10 at 24.  Furthermore, Defendant argues that Plaintiff "provides no

concrete financial evidence" to support a finding that Plaintiff has suffered irreparable injury. Doc. 10 at 25. In addition, Defendant maintains that "the threat of bankruptcy does not satisfy the required showing of irreparable injury." Doc. 10 at 27. Moreover, Defendant reasons that even if Plaintiff's allegations "about going out of business are true," its closure would "simply mean its patients and employees need to find new employment or a new health home agency, of which there are numerous in the Dallas area." Doc. 10 at 27.

"An irreparable injury is one that cannot be remedied by an award of economic damages." *Bennigan's Franchising Co., L.P. v. Swigonski*, No. 3:06-CV-2300-G, 2007 WL 603370, at *4 (N.D. Tex. 2007) (Fish, C.J.) (quoting *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)). To establish irreparable injury, the movant must establish "a significant threat of injury from the impending action, that the injury is imminent, and that the money damages would not fully repair the harm." *Family Rehabilitation, Inc.*, 2018 WL 3155911, at *6 (quoting *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986)). "In the Medicare withholding context, going out of business can be sufficient evidence of irreparable injury." *Id.* (citation omitted)).

Plaintiff submits to the Court the *Declaration Under Penalty of Perjury of Renji Philipose*, Plaintiff's Chief Executive Officer, Doc. 4-1 at 1, in which Philipose declares that Plaintiff "derives ninety-eight percent (98%) of its revenues from Medicare payments; therefore, Defendant's prolonged recoupment while [Plaintiff] awaits an ALJ hearing and decision for the next three to five years will result in irreparable harm to the business." Doc. 4-1 at 4. Moreover, Philipose declared that Plaintiff previously employed 30 employees, but that Defendant's recoupment while Plaintiff awaits an ALJ hearing over the next three to five years "will result in

all employees losing their jobs," and that Plaintiff at this time "can only afford to retain three (3) full time employees." Doc. 4-1 at 4.

In addition, Philipose declares that Plaintiff previously provided home health services to 90 patients but now "only provides services to fewer than twenty (20) patients." Doc. 4-1 at 4. Philipose further declares that in 2017, "[Plaintiff] was valued [at] over $500,000.00; however, the business is now operating at a loss and is at risk of closure and bankruptcy while it awaits an ALJ hearing and decision for the next three to five years." Doc. 4-1 at 4. Philipose further explains that Defendant's "prolonged recoupment due to its failure to timely adjudicate [Plaintiff's] appeal" will result in all of the provider's remaining employees unnecessarily losing their jobs, and that all remaining patients will "soon be transferred to other home health providers on an emergency basis." Doc. 4-1 at 5. Finally, Philipose declares that Plaintiff is unable to engage in an "Extended Repayment Schedule" because Plaintiff cannot afford monthly payments of over $50,000.00 while awaiting for an ALJ hearing.

The Court in Med-Cert considered similar reasons in its irreparable harm analysis and found that the plaintiff established a substantial threat of immediate and irreparable harm:

> Here, CMS continues to recoup over 1.7 million dollars in alleged overpayments without Med-Cert receiving the statutorily required ALJ hearing and overpayment determination. Since CMS began recoupment, Med-Cert has laid off 16 staff members and its gross revenue has decreased by over 60% while its net revenue has decreased by 95%. Med-Cert will be forced out of business if recoupment continues in this manner before an ALJ hears and decides Med-Certs appeal.

*Med-Cert Home Care, LLC*, 2019 WL 426465, at *10.

Although here, Plaintiff has only submitted a claim to Medicare one payment of which a portion was recouped since October 2018, the Court finds that Plaintiff has presented credible evidence that it "will be forced out of business if recoupment continues in this matter before an ALJ hears and decides [Plaintiff's] appeal." *Id.* Moreover, at the hearing, counsel for Defendant

conceded that a "repayment plan" would amount to nearly $50,000 per month since the maximum repayment period permitted under the regulations is five years. As such, a repayment plan would be unfeasible in light of Plaintiff's financial status. Accordingly, the Court finds that Plaintiff has sufficiently established a substantial threat of immediate and irreparable harm.

    C. *The Threatened Injury to Plaintiff Outweighs the Threatened Harm to Defendant*

      Plaintiff argues that the "balance of harm in granting the temporary restraining order between Plaintiff and Defendant weighs in favor of granting the relief [because] Plaintiff will shut its doors, employees will lose their employees, and patients will lose their home health provider," whereas "Defendant will not suffer harm from granting the injunctive relief because they will have the opportunity to recoup any overpayments if the ALJ reaches a decision in their favor." Doc. 3-1 at 6. In opposition, Defendant reasons that it "faces a significant threatened injury as delaying [Plaintiff's] repayment will result in a greater chance the funds cannot be collected." Doc. 10 at 28. Specifically, Defendant argues that in the event of a temporary restraining order, "the Government would continue to accrue interest in accordance with the Medicare statute during that time, resulting in a larger liability" that Plaintiff would likely be unable to pay. Doc. 10 at 29.

      The Court disagrees that Defendant would prejudiced by a delay. While an injunction will delay the government's ability to recoup any overpayments, the government will nevertheless be able to recoup the overpayment amount of the ALJ rules in its favor, "especially since" recoupment is not "easily discharged in bankruptcy." *Med-Cert Home Care, LLC*, 2019 WL 426465, at *12. Essentially, in light of Plaintiff's precarious financial situation, Defendant would be in the same position if Plaintiff is ultimately unsuccessful as it is today.

D. *The Public Interest*

Plaintiff argues that "[n]o public interest would be adversely affected by granting the temporary restraining order." Doc. 3-1 at 5-6. Defendant reasons that granting an injunction would harm the public because such an injunction "would contradict the explicit statutory scheme developed by Congress and encourage other providers, even those with frivolous appeals, to request an ALJ hearing to benefit from the lengthy suspension of recoupment." Doc. 10 at 30. The same argument was expressly rejected by the Court in *Med-Cert*. *Med-Cert Home Care, LLC*, 2019 WL 426465, at *12, for reasons the undersigned finds sound. In any event, the Court finds the public interest would not be adversely affected by the granting of the temporary restraining order. If anything, the public "would benefit from continued access" to Plaintiff's services. *Family Rehabilitation, Inc. v. Azar*, No. 3:17-CV-3008-K, 2018 WL 2670730, at *3 (N.D. Tex. June 4, 2018) (Kinkeade, J.).

IV. **RECOMMENDATION**

For the foregoing reasons, Plaintiff's *Motion and Application for Temporary Restraining Order and Injunctive Relief*, Doc. 3, should be **GRANTED**.

**SIGNED** on February 13, 2019

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

10

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).