IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANGELS OF CARE HOME HEALTH, INC., <br>     PLAINTIFF, <br><br> V. <br><br> ALEX M. AZAR II, SECRETARY, UNITED STATES DEP'T OF HEALTH AND HUMAN SERVICES, <br>     DEFENDANT. | § § § § § § § § § § § | CASE NO. 3:18-CV-3268-X-BK |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 19, this case has been referred to the undersigned magistrate judge for pretrial management. The Court now considers *Plaintiff's Amended Motion for Summary Judgment*, Doc. 57, *Defendant's Amended Cross-Motion for Summary Judgment*, Doc. 58, and *Plaintiff's Supplemental Motion for Summary Judgment*, Doc. 65. For the reasons that follow, Defendant's motion should be **GRANTED,** and Plaintiff's motions should be **DENIED**.

**I. BACKGROUND**

This is a dispute between Plaintiff, a home health care agency, and the government entity in charge of reviewing the claims of Medicare recipients such as Plaintiff and distributing payments for such claims. In March 2018, Plaintiff was notified that a Medicare audit based on extrapolated figures determined that Plaintiff had received more than $2.6 million in Medicare payments to which it was not entitled. Doc. 1 at 11; Doc. 4-1 at 1 (Decl. of Renji Philipose). Plaintiff appealed this "overpayment" determination through two of four steps of a statutorily

prescribed administrative appeals process. Doc. 4 at 5; Doc. 4-1 at 2-3 (Decl. of Renji Philipose). Plaintiff filed its request for the third step in the administrative appeals process — a hearing before an Administrative Law Judge ("ALJ") — on October 25, 2018. Doc. 1 at 12; Doc. 4-1 at 4 (Decl. of Renji Philipose). Although the ALJ is required to render a decision "not later than" 90 days after a timely request, 42 U.S.C. § 1395ff(d)(1)(A), a hearing was not timely held and "may not be available for at least another three to five years due to the serious backlog of agency appeals." Doc. 1 at 12. Plaintiff asserts claims for violation of its procedural due process rights and, more particularly, the overpayment recovery method set forth in 42 U.S.C. §1395ddd(f). Doc. 1 at 12-15. Plaintiff also claims that Defendant acts *ultra vires* by failing to provide a timely ALJ hearing, as required by statute yet still attempting to recoup the Medicare overpayment. Doc. 1 at 15. Plaintiff seeks injunctive relief and attorneys' fees. Doc. 1 at 18-19.

In February 2019, the undersigned held a hearing on Plaintiff's motion for a temporary restraining order ("TRO"), Doc. 19, and issued findings, including that Plaintiff had established a substantial likelihood of success on the merits of its procedural due process claim, Doc. 23. Based on these findings, the district judge enjoined Defendant from withholding Medicare payments intended to recoup the alleged overpayment. Doc. 26. After the parties filed cross-motions for summary judgment, the undersigned recommended that preliminary injunctive relief comporting with the TRO be granted. Doc. 46 at 9. Upon consultation with the district judge, however, that recommendation was withdrawn, and Plaintiff was ordered to file an amended summary judgment motion that addressed all relief it sought. Doc. 52. The motions *sub judice* followed and are now ripe for determination.

## II. LEGAL STANDARD

   *A. Summary Judgment Standard*

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A dispute regarding a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587.

   *B. Requirements for Injunctive Relief*

A plaintiff must establish four elements to secure a permanent injunction: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). A permanent injunction "is an extraordinary and drastic remedy, not to be

granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). To warrant entry of a permanent injunction, Plaintiff must demonstrate actual success on the merits of its due process claim. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).

### C. Due Process

"Procedural due process protects against governmental deprivation of a liberty or property interest." *Med-Cert Home Care, LLC v. Azar*, 365 F. Supp. 3d 742, 749 (N.D. Tex. 2019). When analyzing whether a party's procedural due process rights have been violated, courts weigh three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). Furthermore, since Plaintiff seeks to prevent recoupment until the ALJ hearing process is concluded, succeeding on its due process claim requires Plaintiff to show that the ALJ hearing is required before recoupment — rather than showing that the outcome of the hearing will be favorable. *See Family Rehab., Inc. v. Azar*, 886 F.3d 496, 504 n.14 (5th Cir. 2018) (citing *Eldridge*, 424 U.S. at 335)).

## III.  PARTIES' ARGUMENTS

### A. Parties' Arguments

Plaintiff raises several claims, averring Defendant (1) forced it to go through a "broken" administrative process while recouping properly payable Medicare payments; (2) violated the Medicare Act, particularly the statutory overpayment recovery scheme, by failing to provide an

ALJ hearing within the required 90 days while imposing recoupment; and (3) acts *ultra vires* by failing to timely provide an ALJ hearing in accordance with the Medicare Act, all in violation of Plaintiff's due process rights. Doc. 57-1 at 9-20. As such, Plaintiff contends it is entitled to summary judgment and a permanent injunction preventing recoupment until it has had a hearing and an ALJ renders a decision. Doc. 57-1 at 20.

The gist of Defendant's cross-motion is that Plaintiff has received "the baseline amount of process sufficient to ensure that a proceeding is fair," which is all the Due Process Clause requires. Doc. 59 at 27-51. Defendant also asserts that it has not violated the Medicare Act, but instead has expressly complied with its recoupment requirements, and Plaintiff had the choice to either continue waiting for an ALJ hearing or to escalate the process to the next level of review. Doc. 59 at 51-54. Thus, Plaintiff cannot now argue that its choice to not escalate pursuant to the congressionally provided method denies it due process. Doc. 59 at 25.

### B. The Sahara Decision

After the parties' summary judgment motions were fully briefed, the Court permitted Plaintiff to file a supplemental motion to address the newly released opinion in *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 533 (5th Cir. 2020). Doc. 64. In *Sahara*, an overpayment determination was made against a provider and generally upheld through the first two levels of appeal. *Id.* Defendant started recouping the provider's present and future Medicare reimbursements. *Id.* at 525. Like Plaintiff, the provider claimed to be unable to afford the longest available statutory repayment plan. *Id*. at 527-28; *see* Doc. 4-1 at 5 (Decl. of Renji Philipose averring that Plaintiff is unable to engage in extended repayment schedule because it cannot afford $50,000.00 monthly payments while awaiting hearing). The provider then sought a preliminary injunction rooted in its due process rights to stay recoupment while awaiting a

5

significantly delayed ALJ hearing. The district court denied injunctive relief and granted the government's motion to dismiss, holding that (1) the provider lacked a protected property interest in forestalling the recoupment; and (2) the government had provided adequate process. *Sahara Health Care*, 975 F.3d at 525, 533.

On appeal, the Court of Appeals for the Fifth Circuit determined that the first and third *Eldridge* factors weighed in the provider's favor because its "private interest in adding a hearing outweighs the government's interest in efficient recoupment administration." *Id.* at 529. But the court affirmed the district judge's rejection of the due process claim based on the second *Eldridge* factor, namely the adequacy of the procedures that were, or could have been, used. The court concluded that the combination of the first two levels of appeal plus the remaining available procedures constituted sufficient due process. *Id.* at 532 ("Congress foresaw that an ALJ backlog may arise. It provided a solution: a provider may 'escalate' an appeal directly from step two to step four (Appeals Board review) if no decision has been rendered 90 days after timely notice."). As appellate court summed up: "The sufficiency of the current procedures and the minimal benefit of the live hearing weighs so strongly against Sahara that we reject its due process claim." *Id.* at 529-30. Three factors contributed to the court's rationale on the latter point: (1) the provider did not attempt to demonstrate it could show the good cause necessary to convince the ALJ to permit further development of the factual record; (2) the provider failed to explain how cross-examination at a hearing would be beneficial; and (3) it was unlikely the provider would even be permitted to cross-examine witnesses as the decision whether to present witnesses was solely in the agency's discretion. *Id.* at 531-32.

*C. Plaintiff's Supplemental Summary Judgment Motion*

In its supplemental summary judgment motion, Plaintiff attempts to distinguish *Sahara* in three ways. First, Plaintiff points out that it initially prevailed on its statistical sampling and extrapolation argument on redetermination, but the next day a "corrected decision" reversed the ruling with no explanation. Doc. 65 at 3; *cf.* Doc. 4-1 at 22 (finding statistical sampling review decision "favorable" to Plaintiff) *and* Doc. 4-1 at 63 (finding statistical sampling review decision "unfavorable" to Plaintiff). Second, Plaintiff asserts that the administrative record that would explain this discrepancy is only available at the ALJ level. Doc. 65 at 5. And third, Plaintiff argues that if it had escalated its administrative appeal as *Sahara* suggests, it could not have presented live expert testimony to challenge Defendant's methodology, thereby missing an important level of review. Doc. 65 at 4-5.

Defendant responds that, along with the initial overpayment determination letter, Plaintiff was sent (1) documentation for the statistical sampling and extrapolation method used; and (2) a CD that explained and detailed the findings, the sampling methodology, and how the overpayment was derived as well as a financial spreadsheet that addressed each claim. Doc. 67 at 7; *see* Doc. 4-1 at 7-9 (March 1, 2018 letter from Centers for Medicare & Medicaid Services contractor to Plaintiff ). Defendant then observes that Plaintiff had access to the administrative record at the redetermination – i.e., first – stage of the administrative review process when the reviewer is required to gather all available, relevant, necessary information and any applicable documentation regarding sampling methodology and extrapolation. Doc. 67 at 7 (citing Centers for Medicare & Medicaid Services, MEDICARE CLAIMS PROCESSING MANUAL, "Chapter 29 – Appeals of Claims Decisions," § 310.4.B (2016), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/clm104c29.pdf ("Evidence in the case file must be

made available for inspection by an appellant or party upon request.")).  In any event, Defendant argues, because Plaintiff did not submit supporting expert statements or reports earlier in the administrative review process, it could not have presented that evidence to the ALJ absent good cause, which Plaintiff does not attempt to demonstrate.  Doc. 67 at 8.

Finally, Defendant maintains that Congress anticipated the ALJ hearing process could lead to lengthy delays and designed the escalation procedure to remedy the problem.  Doc. 67 at 11.  Plaintiff's decision to decline that option is thus not a denial of due process.  Doc. 67 at 11.  See Superior Home Health Servs., LLC v. Azar, No 5:15-CV-00636-RCL, 2018 WL 3717121, at *15 (W.D. Tex. Aug. 3, 2018) (denying a home health care provider's due process claim regarding the failure to timely provide an ALJ hearing, stating "[t]hat these [escalation] remedies have been explicitly spelled out in the Medicare Act indicates that Congress anticipated delays yet declined to set for further remedy than that provided in the statute . . . Further remedies beyond the statutory text must come from Congress").

## IV.  ANALYSIS

The Court concludes that Defendant is correct on each point.  Chief among them is the fact that Plaintiff has long had the information it needed to challenge Defendant's statistical/extrapolation methodology.  Indeed, Plaintiff did just that at the redetermination and reconsideration levels and was provided a lengthy response from the independent contractor that reviewed the results of the audit on reconsideration.  See Doc. 4-1 at 63; Doc. 4-1 at 114-17.  Nevertheless, Plaintiff has not attempted to show the "good cause" necessary to present any new evidence at an ALJ hearing.  The regulation titled "Requiring full and early presentation of evidence by providers" that governs situations like this explicitly states:

> A provider of services or supplier may not introduce evidence in any appeal under this section that was not presented at the reconsideration conducted by the

> qualified independent contractor . . . unless there is good cause which precluded the introduction of such evidence at or before that reconsideration.

42 U.S.C. § 1395ff(b)(3); *see also Sahara*, 975 F.3d at 531 ("Absent good cause, additional evidence can only be provided in steps one and two") (citation omitted).  Relying on *Sahara*, a judge of this Court recently declined to issue a preliminary injunction in a similar matter because the provider had not attempted to demonstrate good cause to permit further development of the record or show how cross-examination would be either beneficial or permitted.  *AJ Homecare Connection, Inc. v. Azar*, 3:20-CV-01639-M, 2020 WL 7010041, at *4 (N.D. Tex. Oct. 13, 2020) (Lynn, C.J.).  Other district courts have recently reached similar conclusions.  *See Adams EMS, Inc. v. Azar*, CV H-18-1443, 2021 WL 51729, at *2 (S.D. Tex. Jan. 6, 2021) (holding that while provider presented some evidence about the value of a hearing, it did not show good cause or explain how a hearing would meaningfully differ from review available through escalation process, and provider would likely not be able to cross-examine witnesses) *appeal filed*, No. 21-20064 (5th Cir. Feb. 3, 2021); *Infinity Healthcare Serv., Inc. v. Azar*, 349 F.Supp.3d 587, 600 (S.D. Tex. 2018) (denying injunction where provider testified she might want to procure additional evidence and hire an expert to testify at the ALJ hearing, but did not show good cause for failing to timely present the "hoped-for additional proof" after being notified of the overpayment).

As in *Sahara* and the district court cases cited above, here Plaintiff has neither attempted to show good cause nor explained how it was precluded from introducing any particular evidence at the reconsideration level about the discrepancy between the favorable and unfavorable

redetermination decisions.[1] Plaintiff also does not indicate how any expert it may hire would potentially challenge Defendant's findings at a hearing. *Compare Med-Cert Home Care*, 365 F.Supp.3d at 746-47 (noting that provider had submitted expert opinion and other documentary evidence during administrative appeals process prior to requesting ALJ hearing) *with Infinity Healthcare*, 349 F.Supp.3d at 600 (denying injunction where provider testified she might want to procure additional evidence and hire an expert for ALJ hearing, but did not establish good cause for failing to timely present evidence).

For the foregoing reasons, Plaintiff cannot succeed on its procedural due process claim and, thus, is not entitled to summary judgment. Consequently, the Court need not address the other injunction requirements. Moreover, because (1) Defendant's failure to meet the 90-day deadline for an ALJ decision did not violate the Medicare Act in light of the option to escalate review, and (2) Plaintiff's *ultra vires* claim is dependent on its Medicare Act and due process arguments, Defendant is entitled to summary judgment on those claims as well.

## V. CONCLUSION

For the foregoing reasons, *Defendant's Amended Motion for Summary Judgment*, Doc. 58, should be **GRANTED**, and *Plaintiff's Amended Motion for Summary Judgment*, Doc. 57,

---

[1] The unfavorable decision states that Defendant's statistical consultants found that they could be 90% confident that the total overpayment was at least $2,602,318.00. The Fifth Circuit has remarked that "[t]he extrapolation methodology may be imperfect, but it is the product of a complex balance of interests. At a minimum, it constitutes substantial evidence in support of the agency's decision." *Palm Valley Health Care, Inc. v. Azar*, 947 F.3d 321, 330 (5th Cir. 2020), *cert. denied*, 141 S.Ct. 262 (2020). The court further noted that the methodology is "provider friendly" in that there is a 90% probability that the calculated average overpayment is *smaller* than the actual overpayment. *Id.* (citing Medicare Program Integrity Manual § 8.4.5.1).

and *Supplemental Motion for Summary Judgment*, Doc. 65, should be **DENIED**.

**SO RECOMMENDED** on April 27, 2021.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).